IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **LORRIE M. DUTTON,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v.  § | No. 3:10-CV-02386-BF |
| § | |
| **COMMISSIONER OF SOCIAL** § | |
| **SECURITY ADMINISTRATION,** § | |
| § | |
| **Defendant.** § | |
| § | |

## MEMORANDUM OPINION AND ORDER

This is a consent case before the United States Magistrate Judge. Lorrie M. Dutton ("Plaintiff") brings this action pursuant to section 405(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g). She seeks review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II, 42 U.S.C. §§ 416(i), 423. After consideration of the records, Defendant's Motion for Summary Judgment is granted, and the Commissioner's decision is affirmed.

### Procedural History[1]

On May 25, 2007, Plaintiff filed an application for Title II benefits, and amended her alleged disability onset date to November 16, 2004. (Tr. 132.) Plaintiff claimed she was disabled due to pain in her back, hip and knee, as well as her left shoulder, arm, and ankle. (Tr. 132.) Her claim was denied initially and upon reconsideration by the Social Security Administration. (Tr. 47.) After

---

[1] The following history comes from the transcript of the administrative proceedings, which is designated as "Tr."

1

being denied benefits initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 4.)

A hearing was held on June 17, 2009 in Fort Worth, Texas, at which time the ALJ heard testimony from Plaintiff and Todd Harden, a vocational expert ("VE"). (Tr. 24, 100.) The ALJ issued an unfavorable decision on July 21, 2009, finding Plaintiff had not been under a disability from her date of onset through the date of the decision. (Tr. 60.) On March 25, 2010, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. (Tr. 4-6.) Plaintiff filed this case on November 22, 2010, appealing the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g). (Pl. Pet. 1.) This matter is ripe for consideration on the merits.

*Plaintiff's Age, Education, and Work Experience*

Plaintiff was born on July 22, 1958. (Tr. 119.) Plaintiff attended college and obtained an Associate Degree. (Pl. Br. 2.) She has past relevant work as a sales representative, merchandiser, and department manager. (Tr. 133.) Plaintiff met the insured status requirement of the Act through December 31, 2009. (Tr. 49.)

*Plaintiff's Relevant Medical Evidence*

On September 24, 2004, Plaintiff was treated in the emergency room following a work-related automobile accident. (Tr. 49.) Plaintiff received x-rays of the cervical spine, lumbar, and left shoulder, which revealed mild degenerative spurring at C5 and C6, but were otherwise negative. (Tr. 214.) In December 2004, Plaintiff was seen by Dr. J.E. McGrory, an orthopedic surgeon, who diagnosed her with left shoulder impingement and a rotator cuff tear. (Tr. 298.) On December 15, 2004, Plaintiff underwent surgery by Dr. McGrory on her left shoulder, and subsequently

participated in physical therapy. (Tr. 298.) Throughout 2005, she complained of increasing pain with any movement but noted some improvement due to physical therapy and her medication. (Tr. 429-443.) She also noted that she was "less emotional" since she started taking Zoloft. (Tr. 441.) In April 2005, Plaintiff's therapist reported she was ready to be discharged to at-home exercises and her activity status was "modified." (Tr. 433.) In July 2005, at a pain management evaluation, Plaintiff complained of chronic neck, shoulder, and upper back pain with depression, anxiety, and mood disturbances. (Tr. 560-562.) She was often frustrated, her sleep was disturbed, it was difficult to make decisions, and her memory was poor. *Id.*

In August 2005, it was noted her sleep, pain tolerance, and mood had all been improved with her new drug regimen but she continued to experience pain in her neck and upper back. (Tr. 554.) A left shoulder arthrogram was performed on October 6, 2005, which revealed a rotator cuff tear in the region of the supraspinatus insertion. (Tr. 370.) On November 1, 2005, an open rotator cuff repair, subacromial decompression, and open removal of adhesions were performed by Dr. Angelo Otero. (Tr. 341-342.) In December 2005, at a six week follow-up visit to the orthopedic surgeon, Plaintiff claimed she was doing much better and returning to physical therapy. (Tr. 447.)

Plaintiff was discharged from physical therapy in February 2006, and it was noted that her range of motion had improved but she continued to experience numbness, pain, and discomfort on her left side. (Tr. 385.) From February to April 2006, Dr. Bruce Bolinger completed Texas Workers' Compensation Work Status Reports where he opined that Plaintiff was unable to work. (Tr. 405, 410, 418.) In April 2006, at a six month follow-up post-surgery visit, her orthopedic surgeon noted that she was neurovascularly intact, did not have any surgical problems, and needed to continue therapy and pain management. (Tr. 478.)

3

From June to July 2006, Plaintiff attended four pyschotherapy sessions where she was diagnosed with pain disorder and assessed a GAF of 60.[2] (Tr. 576-579.) Plaintiff reported her pain with prolonged activity was at level 7 on a scale of 0 to 10. *Id.*

In a psychological treatment summary on August 2006, Graciela Valenzuela, M.A., a licensed professional counselor, stated that Plaintiff reported difficulty tolerating any prolonged activities such as driving or walking extended distances, had symptoms of anxiety and depression, and isolated herself at home. (Tr. 577.) Plaintiff was relying on passive strategies to manage her pain such as limiting her activities. *Id.* Plaintiff's physician, Dr. Gordon McWatt, D.O., had stated that all conservative care had been exhausted and Dr. Neil Atlin, a pain specialist, seconded this opinion. (Tr. 578.) It was recommended that Plaintiff enroll in an interdisciplinary pain program to deal with her high stress and pain levels. *Id.* By September 2006, Plaintiff had received twenty pain management sessions. (Tr. 539.) It was reported she had better coping techniques, her depression level had dropped, and she was discharged from the pain management program for vocational retraining. (Tr. 539.)

On April 2007, Plaintiff was seen by Dr. R. Saunders, who opined that she was medically unable to work. (Tr. 696.) At a June 2007 evaluation, Dr. McWatt determined that Plaintiff was "medically unable to work." (Tr. 699.) In August 2007, at a visit to Dr. William Seger, Plaintiff complained of fever, chills, dizziness and requested a letter for "disability for sickness, eye vision, and not being able to work." (Tr. 833-834.)

On August 24, 2007, Plaintiff received a consultative psychological examination by Kelly

---

[2] A GAF score represents a clinician's judgment of an individual's overall level of functioning. *See* AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. text rev. 2000) (DSM). A GAF score of 51–60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *See id.*

4

Goodness, Ph.D., a clinical psychologist. (Tr. 826.) Her thought processes were logical, relevant, and goal directed. (Tr. 828.) She was focused, alert and oriented; her performance on cognitive tasks was within normal limits; her delayed memory was mildly impaired but her attention and concentration were adequate. (Tr. 829.) She was diagnosed with a pain disorder and the clinical psychologist opined that she did not appear to have a diagnosable mental disorder that was likely to change. (Tr. 830.)

On September 25, 2006, Plaintiff was seen by Dr. Marvin Van Hal, an orthopedic surgeon, who assessed that she had reached maximum medical improvement as of that date and an eleven percent impairment rating for Workers' Compensation purposes, based on her range of motion.[3] (Tr. 893-903.) Under Texas law, "maximum medical improvement" is defined as "the earliest date after which, based on reasonable medical probability, further material recovery from or lasting improvement to an injury can no longer reasonably be anticipated." TEX. LAB. CODE ANN. § 401.011 (Vernon 2009). In November 2007, Dr. Van Hal did not see any reason to change his earlier September 2006 assessment. (Tr. 893-894.)

From October 2008 to February 2009, Dr. Steven Casey, D.O., signed off on Texas Workers' Compensation Work Status Reports where he opined that Plaintiff was unable to work. (Tr. 886-891.) Plaintiff stopped receiving Workers' Compensation in September 2006 and settlement payments in May 2007, but she was still receiving medical treatment through Workers' Compensation to the date of the decision. (Tr. 28-29, 57.)

*The ALJ's Decision*

---

[3] The greater this percentage, the greater the amount the employee receives as Workers' Compensation benefits. The impairment rating may also qualify an employee for supplemental income benefits, which provide long-term disability compensation. *See* TEX. LAB. CODE ANN. § 408.142 (Vernon 2005).

5

The ALJ found that Plaintiff last met the insured status requirements of the Act through December 31, 2009. (Tr. 49.) The ALJ found that Plaintiff has not engaged in substantial gainful activity since November 16, 2004, the alleged onset date. (Tr. 49.) The ALJ found Plaintiff to have the severe impairments of shoulder, neck, back, hip, knee, and ankle pain; pain disorder; depression; and personality disorder. (Tr. 49.) The ALJ found that no impairment or combination of impairments meets or medically equals one of the listed impairments in Appendix I of the Regulations. (Tr. 49.)

The ALJ found that Plaintiff has the residual functional capacity ("RFC") to lift/carry ten pounds frequently and twenty pounds occasionally, and to do work that does not require constant handling or work overhead. (Tr. 56.) Plaintiff could stand/walk and sit for about six hours in an eight-hour workday and could push or pull on an unlimited basis. (Tr. 819.) Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. 820.) Plaintiff could understand, remember, perform detailed but not complex tasks, and adapt to changes in a routine work setting for a sustained basis; i.e., for a forty-hour work week for an indefinite period of time. (Tr. 56.) In making this determination, the ALJ found that the Plaintiff's medical impairments could reasonably be expected to cause some of the alleged symptoms; however, the testimony regarding the intensity, persistence, and limiting effects of her symptoms was not credible. (Tr. 58.)

The ALJ determined that Plaintiff is unable to perform her past relevant work as a merchandiser or department manager. (Tr. 59.) However, the VE's testimony indicated that Plaintiff had acquired skills in sales and customer service. (Tr. 59.) The VE indicated that there were other jobs Plaintiff could perform such as furniture sales (sedentary, SVP of 4), advertising sales (sedentary, SVP of 6), demonstrator positions (sedentary, SVP of 3), and other sedentary level

jobs. (Tr. 39.) Thus, the ALJ found that Plaintiff had acquired skills from her past relevant work that can transfer to other jobs. (Tr. 59.) Finally, the ALJ found that Plaintiff has not been under a disability, as defined by the Act, from November 16, 2004 through the date of the decision. (Tr. 60.)

## **Standard of Review**

To be entitled to social security benefits, a plaintiff must prove that she is disabled for purposes of the Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove her disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. At the fifth step, the Commissioner bears the initial burden of proof, but once the Commissioner meets the burden that the claimant is capable of performing other jobs in the national economy, the burden shifts back to the claimant to rebut this finding. *Mitchell v. Barnhart,* 415 F.3d 457, 461 (5th Cir. 2005).

Judicial review of the Commissioner's findings is limited to "two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C.A. § 405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

The Commissioner's determination is afforded great deference. *Id*. The reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. "The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel,* 209 F.3d 448, 455 (5th Cir. 2000). If supported by substantial evidence, the Commissioner's findings are conclusive and are to be affirmed. *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999). A finding of no substantial evidence is appropriate only if no creditable evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

*Issue for Review*

Plaintiff argues that the ALJ's decision is not supported by substantial evidence. Specifically, Plaintiff claims that the ALJ erred by finding that Plaintiff acquired skills from her past relevant work that are transferable to other jobs within her RFC. The Commissioner counters that substantial evidence supports the ALJ's RFC finding and decision.

## **Analysis**

Plaintiff contends that the ALJ failed to properly evaluate Plaintiff's RFC with regard to her ability to perform other jobs on a sustained basis. (Pl. Br. 2.) Before considering step four of the sequential evaluation process, the ALJ must determine the claimant's RFC. 20 CFR §§ 404.1520(e) and 416.920(e). A person's RFC is her ability to perform physical and mental work activities on a regular and continuing basis notwithstanding limitations from her impairments. 20 CFR § 404.1545. The ALJ is responsible for determining a claimant's RFC if the claimant is at the ALJ hearing level. 20 CFR § 404.1546(c).

In assessing the claimant's RFC, the ALJ will consider all medical evidence as well as other evidence provided by the claimant. 20 CFR § 404.1545(a)(3). Once the ALJ has assessed the claimant's RFC, step four of the sequential evaluation process allows the ALJ to determine whether the claimant has the RFC to perform the physical and mental requirements of her past relevant work. 20 CFR §§ 404.1520(f) and 416.920(f). Past relevant work is defined as substantial gainful activity, done in the last fifteen years, that lasted long enough so that a person learned how to do it. 20 CFR § 404.1560(b)(1). In determining whether the claimant can perform her past relevant work, the ALJ may consider information provided by the claimant regarding such work, testimony provided by a

VE, or other sources such as the Dictionary of Occupational Titles ("DOT").  20 CFR § 404.1560(b)(2).

At the hearing, the ALJ asked the VE whether a hypothetical individual with pain limitations similar to those of Plaintiff could perform Plaintiff's past work.  (Tr. 39.)  The VE responded that an individual with these limitations could not perform Plaintiff's past work.  (Tr. 39.)  When asked whether other work existed for such a claimant who is "afflicted with pain that is noticeable to her at all times" but could work at a "light exertional level," the VE stated that, nationally, there are approximately 180,000 furniture sales positions, 70,00 advertising sales positions, and 10,000 demonstrator positions within that RFC.  *Id.*  Claimant's counsel then asked the VE about the acceptable rate of absenteeism for these positions.  (Tr. 40.)  The VE testified that one to two absences per month is usually considered acceptable and tolerated by employers.  *Id.* When questioned about the effect of significant number of interruptions or lengthy rest periods during a normal workday, the VE stated that such a need would be incompatible with competitive employment. *Id.*

### *Plaintiff's Ability to Work*

The ALJ is required to make affirmative findings regarding a claimant's subjective complaints. *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).  When a plaintiff alleges disability resulting from pain, she must establish a medically determinable impairment that is capable of producing disabling pain. *Ripley v. Chater,* 67 F.3d 552, 556 (5th Cir. 1995) (citing 20 C.F.R. § 404.1529).  Once a medically determinable impairment is established, the subjective complaints of pain must be considered along with the evidence in determining the individual's work capacity. *Id.*

10

It is well settled that an ALJ's credibility findings on a claimant's subjective complaints are entitled to deference. *See Chambliss v. Massanari,* 269 F.3d 520, 522 (5th Cir. 2001); *Scott v. Shalala,* 30 F.3d 33, 35 n. 2 (5th Cir. 1994); *Falco,* 27 F.3d at 164. The Fifth Circuit has recognized that "the ALJ is best positioned" to make these determinations because of the opportunity to observe the claimant first-hand. *See Falco,* 27 F.3d at 164 n. 18. Moreover, "[t]he Act, regulations and case law mandate that the Secretary require that subjective complaints be corroborated, at least in part, by objective medical findings." *Harrell v. Bowen,* 862 F.2d 471, 481 (5th Cir. 1988) (citing 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529; *Owens v. Heckler,* 770 F.2d 1276, 1281-82 (5th Cir. 1985)).

As a matter of law, the fact that working may cause a claimant pain or discomfort does not mandate a finding of disability. *See Hames,* 707 F.2d at 166. Moreover, the existence of pain does not automatically result in a finding of disability. *Harper v. Sullivan,* 887 F.2d 92, 96 (5th Cir. 1989); *Owens,* 770 F.2d at 1281. It must be determined whether substantial evidence indicates an applicant can work despite being in pain or discomfort. *See Chambliss,* 269 F.3d at 522; *Johnson v. Heckler,* 767 F.2d 180, 182 (5th Cir. 1985).

Plaintiff argues that she could not maintain employment on a sustained basis because the evidence showed she was medically unable to work and experiences severe pain. (Pl. Br. 2.) Plaintiff cites to multiple Workers' Compensation Reports and medical source statements from the relevant period supporting her claim she would be required to miss work due to her alleged disabling condition. (Tr. 405, 410, 696, 699, 864-65, 886-91.)

The ALJ held that Plaintiff did indeed suffer from severe impairments. (Tr. 49.) These impairments were determined to be of such nature as to prevent Plaintiff from performing work in

a capacity similar to her past relevant jobs. (Tr. 59.) However, the ALJ concluded that Plaintiff retained RFC to perform a full range of light work activity.[4] (Tr. 56.) As noted earlier, in September 2006, Dr. Atlin opined that Plaintiff "should do well with a job at [a sedentary] level if she learns to use her pain management techniques." (Tr. 53, 539.) The ALJ considered the evidence from the state agency reviewing physicians and mental health professionals.

The ALJ also considered the physicians' opinions who indicated that Plaintiff could no longer work. (Tr. 405, 410, 864-65, 886-91.) But these physician opinions have no special significance when they opine that an applicant is "disabled" or "unable to work." *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). These determinations are legal conclusions that the regulations describe as "reserved to the Commissioner." *Id.*

Further, the ALJ relied on the VE's testimony in determining that Plaintiff could perform a variety of jobs that are available in significant numbers in the national economy. (Tr. 60.) The ALJ based his decision on a variety of sources indicating that Plaintiff has the capability of performing other jobs. Plaintiff failed to prove that she cannot perform the alternative work.

After reviewing the record, the Court finds the ALJ's decision is properly supported by substantial evidence. The ALJ properly considered the relevant medical evidence, and that evidence supports that Plaintiff is not disabled under the Social Security Act and is not entitled to an award of benefits.

---

[4] Light work is work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

## **CONCLUSION**

For the foregoing reasons, the Commissioner's Motion for Summary Judgment is GRANTED, and the final decision of the Commissioner is AFFIRMED.

SO ORDERED, February 24, 2012.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE